# Ex. 8

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK, COMMONWEALTH OF PENNSYLVANIA, STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF DELAWARE, DISTRICT OF COLUMBIA, STATE OF ILLINOIS, STATE OF MARYLAND, COMMONWEALTH OF MASSACHUSETTS, STATE OF MICHIGAN, STATE OF MINNESOTA, STATE OF NEW JERSEY, STATE OF NEW MEXICO, STATE OF OREGON, STATE OF RHODE ISLAND, STATE OF VERMONT, COMMONWEALTH OR VIRGINIA, and STATE OF WASHINGTON, | Civil Action No. 20-cv-1689 Hon. Gregory H. Woods |
| Plaintiffs, | |
| v | |
| EUGENE SCALIA, *in his official capacity as Secretary of State of the United States Department of Labor,* UNITED STATES DEPARTMENT OF LABOR, and UNITED STATES OF AMERICA, | |
| Defendants. | |

## DECLARATION OF DEPUTY DIRECTOR SEAN EGAN

I, Mr. Sean Egan, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the Deputy Director for Labor within the Michigan Department of Labor and Economic Opportunity. I provide direct oversight and responsibility for the Michigan Occupational Safety and Health Administration, the Workers' Disability Compensation Agency, the Bureau of Employment Relations, and the Wage and Hour Division on all programmatic, operational, and development needs.

2.      Prior to my current position, I served as General Counsel for the International Brotherhood of Electrical Workers Local 876.  As General Counsel, I handled all aspects of employee and organizational representation, including contract negotiation, grievance and arbitration administration, processing individual member issues such as Wage and Hour complaints, and ensuring organizational compliance.

3.      I received my Juris Doctor from the Thomas M. Cooley Law School, and I received my Bachelor of Business Administration and Management with a Finance Concentration from Davenport University.  I also served as a Journeyman Electrician through the U.S. Department of Labor-approved West Michigan Electrical Training Alliance.

4.      I submit this declaration in support of Michigan's litigation against Eugene Scalia, in his official capacity as Secretary of the United States Department of Labor; the United States Department of Labor ("USDOL"); and the United States of America regarding the recently issued rule entitled Joint Employer Status Under the Fair Labor Standards Act ("Final Rule").

5.      I have compiled the information in the statements set forth below through personal knowledge and through Department of Labor and Economic Opportunity ("LEO") personnel who have assisted me in gathering this information from our institution and on the basis of documents that have been provided to and/or reviewed by me.  I have also familiarized myself with the Final Rule in order to understand its immediate impact upon LEO.

6.   In sum, the Final Rule will reduce Michigan workers' ability to recover unpaid wages, and consequently lower Michigan's tax revenue base that is necessary to provide essential governmental services to all Michigan residents.

7.   In Michigan, numerous industries have high rates of subcontracting, including but not limited to construction, personal beauty services, delivery and transportation services, and temporary help services.

8.   Of the 12,399 Wage and Hour complaints received by LEO from fiscal year 2017 through fiscal year 2019, 1,180 were made by workers in the few industries listed above.[1]

9.   Research estimates that subcontracting, or "domestic outsourcing," results in approximately a 10 percent reduction in wages. See https://www.epi.org/publication/epi-comments-regarding-the-department-of-labors-proposed-joint-employer-standard/. Thus, workers in these industries are already penalized in the amount of wages based on their employment status.

10.   While workers may file complaints with LEO and possibly receive an administrative determination finding wages are owed, collecting those wages are problematic when businesses ignore inquiries, evade service of process, close due to insolvency, or close and reopen under a new entity.

11.   The Final Rule acknowledges that the enforcement of wage protections will be more difficult, conceding that it will "reduce the amount of back wages that

---

[1] Totaled using NAICS prefix codes 23-, 48-, and 49-, and subcategory codes 56132 and 812112.

3

employees are able to collect when their employer does not comply with the Act and, for example, their employer is or becomes insolvent." 85 Fed. Reg. at 2853.

12. Increased wage theft means workers take home less pay, which shrinks the pool of taxable income that government departments and agencies rely upon.

13. Wage theft resulted in approximately $429 million in unpaid wages to Michigan workers between 2013 and 2015. See https://www.epi.org/publication/employers-steal-billions-from-workers-paychecks-each-year/.

14. By not paying workers all wages due, a reduction in employment taxes also results, which decreases the anticipated revenue that Michigan relies upon in offering essential services to its residents.

15. The Final Rule will cause Michigan to incur administrative and regulatory costs by increasing the number of wage complaints filed, limiting the recovery of those wages, and decreasing the state's revenue.

16. Michigan has the following labor law protections that are relevant to the Final Rule: the Payment of Wages and Fringe Benefits Acts, Mich. Comp. Laws § 408.471 *et seq.*; and the Improved Workforce Opportunity Wage Act, Mich. Comp. Laws § 408.431 *et seq.*

17. Michigan's labor laws generally track the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, but currently provide for a higher minimum wage.

18. Michigan's labor law looks for areas of consistency with the federal standard for assessing joint employment status when applying its joint employment, or "co-employment," policy.

19. Michigan's policy on joint employment will likely need revision due to the Final Rule if the state is to apply a consistent joint employment test for employers in Michigan.

20. Updating the guidance will impose administrative burdens on LEO and Michigan employers and workers.

21. To date, Michigan has received questions regarding the extent to which the DOL's Final Rule applies to Wage and Hour investigations and administration, including whether the Final Rule supersedes Michigan's current standard.

22. To address possible confusion, Michigan has provided general updates and training to highlight the application of Michigan's handling of joint employer questions in the Wage and Hour context.

23. In addition, Michigan will have to fill in the gap in federal enforcement created by the Final Rule if it is to ensure the current level of protections.

24. LEO and the State of Michigan as a whole are expected to face significant budgetary shortages in the next few fiscal years due to the COVID-19 pandemic and resulting economic crisis.

25. From fiscal year 2017 through fiscal year 2019, the cost to investigate wage violations averaged $868.80 per complaint.

26. Given the expected budgetary shortages, it is unlikely that additional resources will be available to hire additional staff to assist in completing increased investigations.

27. With fewer individuals and entities responsible for the payment of workers' wages, it is reasonably foreseeable that Michigan will receive more complaints as individuals increasingly turn to the state for help.

I declare under penalty of perjury that, to the best of my knowledge, the foregoing is true and correct

Executed this 12th day of May, 2020 at Lansing, Michigan.

*Sean Egan*
Sean Egan
Deputy Director for Labor