Ex. 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| STATE OF NEW YORK, COMMONWEALTH OF PENNSYLVANIA, STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF DELAWARE, DISTRICT OF COLUMBIA, STATE OF ILLINOIS, STATE OF MARYLAND, COMMONWEALTH OF MASSACHUSETTS, STATE OF MICHIGAN, STATE OF MINNESOTA, STATE OF NEW JERSEY, STATE OF NEW MEXICO, STATE OF OREGON, STATE OF RHODE ISLAND, STATE OF VERMONT, COMMONWEALTH OF VIRGINIA, and STATE OF WASHINGTON, | Civil Action No. 20-cv-1689 |
| Plaintiffs, | |
| v. | |
| EUGENE SCALIA, *in his official capacity as Secretary of the United States Department of Labor*; UNITED STATES DEPARTMENT OF LABOR; and UNITED STATES OF AMERICA, | |
| Defendants. | |

## DECLARATION of LESLEY HIRSCH

I, Lesley Hirsch, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the Assistant Commissioner of Research at the New Jersey Department of Labor and

   Workforce Development (NJDOL) located in Trenton, NJ. I have been employed as

   Assistant Commissioner of Research since July 31, 2018. My division oversees all of the

   Bureau of Labor Statistics State Cooperative Programs; the US Bureau of the Census's State

1

Data Center; a team of economists with expertise in the State's regions and key industries; State and Federal reporting on workforce and worker benefits and protection programs; the review and approval of private career schools; and the Eligible Training Provider List. I have held senior research and evaluation positions for more than 25 years, and for 12 of those years, I have served as a labor economist. In the 10 years immediately prior to coming to NJDOL, I was the founding director of the New York City Labor Market Information Service at the City University of New York's Graduate Center, which provides research and consulting services to City and State agencies and organizations in New York City and the metropolitan region.

2.   I hold a Bachelor of Arts from Barnard College at Columbia University and have completed all requirements for a doctoral degree in political science except a dissertation.

3.   I submit this declaration in support of New Jersey's litigation against Eugene Scalia, in his official capacity as Secretary of the United States Department of Labor; the United States Department of Labor ("USDOL"); and the United States of America regarding the recently issued rule entitled Joint Employer Status Under the Fair Labor Standards Act ("Final Rule").

4.   I have compiled the information in the statements set forth below myself, based on my personal knowledge and through NJDOL personnel who have assisted me, and on the basis of documents and data that have been provided to and/or reviewed by me. I have also familiarized myself with the Final Rule in order to understand its impact upon New Jersey.

5.   As explained below, my review suggests that the Final Rule will result in increased wage and hour violations, including wage theft, in industries with the highest incidence of subcontracting and outsourcing. Such violations lower New Jersey's income tax revenue

base and result in losses to New Jersey's unemployment insurance, workforce development, disability and family leave insurance funds.  And because New Jersey's labor laws regarding joint employment are broader than the Final Rule, employees will increasingly bring wage claims to NJDOL and New Jersey courts, thus burdening both NJDOL's administrative enforcement resources and the courts.

6.  The Final Rule permits reliance on only four factors to determine joint employer status: Whether the entity "(i) Hires or fires the employee; (ii) Supervises and controls the employee's work schedule or conditions of employment to a substantial degree; (iii) Determines the employee's rate and method of payment; and (iv) Maintains the employee's employment records." 29 C.F.R.  791.2(a). The Final Rule prohibits consideration of other factors, such as whether the employee is economically dependent on the potential joint employer. The Rule also deems reserved power or authority, such as the yet-unexercised power to fire an employee, insufficient to confer joint employer status. In many subcontracting and outsourcing situations, under the narrowed definition, entities that benefit from and exert some forms of indirect control over employees may evade liability as joint employers, making it more difficult for the employee or the government enforcement agency to collect wages and payroll taxes.

7.  New Jersey has comprehensive labor law protections in place, which require that workers are: paid the minimum wage; paid overtime for hours worked over 40 hours in a 7 day work week; notified of their rate of pay and payday; protected against illegal deductions; and provided a statement of pay and any deductions for each pay period.[1]

---

[1]All employers/employees in New Jersey are covered under New Jersey Wage and Hour Law, whereas under Federal Law, an employer must have two or more employees engaged in interstate commerce, and an annual gross revenue in excess of $500,000, to be subject to the FLSA.

8.  New Jersey labor laws provide a broader standard for assessing joint employer status than the Final Rule. For example, under the Wage Collection Statute (N.J.S.A. 34:11-58.2), a labor contractor and the client employer are statutorily held jointly responsible for wages due to employees and other violations of wage and hour laws and State tax laws. Additionally, under N.J.S.A. 34:8-68, which is enforced by the Division of Employer Accounts, a professional employer organization is held jointly responsible, with the client employer, for payment of wages to employees.

9.   As a result of the narrowed FLSA joint employer test, many contractors and other business entities will be considered joint employers under New Jersey law, but will no longer be deemed employers under the FLSA.

10.  Joint employer relationships are one aspect of "fissured workplaces," where businesses distribute work through an extensive network of contracting, subcontracting, outsourcing, franchising, and ownership in an effort to limit legal exposure, reduce labor costs, and increase profits. In some cases, it is difficult for employees to identify the entities that function as their joint employers, especially when an employer has gone out of business, disappeared or become insolvent. In such cases, NJDOL's enforcement efforts will be much more difficult.

11. Although behaviors common in fissured industries – e.g., subcontracting and outsourcing - occur across much of the economy, the industries listed in Table 1 are broadly recognized as the most fissured industries.[2] These industries make up 19.2 percent of total private sector

---

[2] David Weill, *Understanding the Present and Future of Work in the Fissured Workplace Context,* The Russell Sage Foundation Journal of the Social Sciences, December 2019, 5(5), 147-165; David Weill, *The Fissured Workplace: Why Work Became So Bad for So Many and What Can Be Done to Improve It* (Harvard University Press 2014);

employment in the State of New Jersey. The total $15.7 billion in taxable wages in these

industries represents 16.6 percent of the State's taxable wages.[3]

---

Frederick Abernathy, Kermit Baker, Kent Colton and David Weil, *Bigger Isn't Necessarily Better: Lessons from the Harvard Home Builder Survey* (Lexington Books 2012); Matthew Dey, Susan Houseman and Anne Polivka, *What Do We Know About Contracting Out in the United States? Evidence from Household and Establishment Surveys,* in *Labor in the New Economy*, Katherine Abraham, James Spletzer and Michael Harper, eds. (University of Chicago Press 2010); Michael Grabell, *The Expendables: How the Temps Who Power Corporate Giants Are Getting Crushed*, ProPublica, June 27, 2013; Brett Murphy, *Retail Giants Enable Trucker Exploitation,* USA Today, June 29, 2017; James Parrott and Michael Reich, *An Earnings Standard for New York City's App-Based Drivers: Economic Analysis and Policy Assessment*, Report to the New York Taxi and Limousine Commission, The New School, Center for New York City Affairs (2018); Alana Semuels, *What Amazon Does to Poor Cities,* The Atlantic, February 1, 2018; Steve Viscelli, *The Big Rig: Trucking and the Decline of the American Dream*, University of California Press (2016); Lauren Weber, *The Second-Class Office Workers*, Wall Street Journal, Sept 24, 2017; Lauren Weber, *Some of the World's Largest Employers No Longer Sell Things, They Rent Workers*, Wall Street Journal, December 28, 2017.

[3] Analysis conducted by the New Jersey Department of Labor and Workforce Development, Office of Research and Information, Quarterly Census of Employment and Wages, 2018.

**Table 1. New Jersey Employment in Highly Fissured Industries**

| NAICS Code[4] | Description | Number of New Jersey Employees |
|---|---|---|
| 56132 | Temporary help services | 99,395 |
| 4451 | Grocery stores | 91,498 |
| 722513 | Limited-service restaurants | 74,640 |
| 4931 | Warehousing and storage | 56,581 |
| 6216 | Home health-care services | 49,055 |
| 8121 | Personal care services | 38,038 |
| 56172 | Janitorial services | 35,036 |
| 4841 | General freight trucking | 28,264 |
| 72111 | Hotels (except casino hotels) and motels | 25,760 |
| 56173 | Landscaping services | 25,431 |
| 72231 | Food service contractors | 24,385 |
| 23611 | Residential building construction | 22,773 |
| 51731 | Telecommunications carriers, wired and wireless | 22,591 |
| 561612 | Security guards and patrol services | 21,979 |
| 44711 | Gasoline stations with convenience stores | 12,426 |
| 56142 | Telephone call centers | 10,626 |
| 811192 | Car washes | 4,509 |
| 4853 | Taxi and limousine services | 4,365 |
| 23831 | Drywall and insulation contractors | 3,877 |
| 81293 | Parking lots and garages | 3,457 |
| 56171 | Exterminating and pest control services | 3,009 |
| 56179 | Other services to buildings and dwellings | 2,985 |
| 81299 | All other personal services | 2,353 |
| 56143 | Business service centers | 1,781 |
| 23813 | Framing contractors | 1,240 |
| 5152 | Cable and other subscription programming | 802 |
| 56292 | Materials recovery facilities | 770 |
| 72233 | Mobile food services | 305 |
| | **TOTAL HIGHLY FISSURED INDUSTRY EMPLOYEES:** | **667,931** |
| | **TOTAL PRIVATE SECTOR EMPLOYEES:** | **3,472,321** |
| | **PERCENTAGE OF PRIVATE WORKFORCE IN HIGHLY FISSURED INDUSTRIES:** | **19.24%** |

*Source: N.J. Department of Labor and Workforce Development, Office of Research and Information, Quarterly Census of Employment and Wages.*

---

[4] North American Industry Classification System ("NAICS") is a system used by the U.S., Canada, and Mexico to classify businesses by industry. https://www.census.gov/small business/html/naics.html

12. The data in Table 1 and in Table 2 below show that, although highly fissured industries

make up only 19.2% of New Jersey's private workforce, these industries were responsible

for 45% of the *wage-related* Wage and Hour Law violations.

**Table 2. New Jersey Wage and Hour Violations in Calendar Year 2019: Fissured Industries Compared to the Private Sector as a Whole**

| New Jersey Wage Statute Violations | All Industries | Industries with High Rates of Subcontracting and Outsourcing | |
|---|---|---|---|
| | | # | % |
| Failure to Pay Prevailing Wage | 77 | 0 | 0% |
| Failure to Pay Prevailing Wage on Utility Work | 5 | 0 | 0% |
| Failure to Pay Wage Standard | 1 | 0 | 0% |
| State Building Service Contracts | 1 | 1 | 100% |
| Failure to Pay Earned Sick Leave | 5 | 0 | 0% |
| Minimum Wage Rate | 348 | 515 | 46% |
| Overtime Rate | 250 | 130 | 52% |
| Unpaid Wages or Late Payments | 764 | 340 | 45% |
| Illegal Deductions | 67 | 62 | 93% |
| TOTAL WAGE-RELATED | 3,169 | 1,434 | 45% |

13. Misclassification — the practice of illegally and improperly classifying workers as

independent contractors rather than employees – and paying workers off the books are

especially prevalent in highly fissured industries. These include construction, janitorial

services, home care, transportation, trucking and delivery services.[5]

---

[5]National Employment Law Project, *Independent Contractor Misclassification Imposes Huge Costs on Workers and Federal and State Treasuries*, Sept. 2017 https://s27147.pcdn.co/wp-content/uploads/NELP-independent-contractors-cost-2017.pdf

14. In the aforementioned industries, employers that misclassify their employees as independent contractors evade up to 30% of payroll and related taxes that they would otherwise be required to pay if they were properly classifying their workers as employees.[6]

15. The Final Rule acknowledges that the enforcement of wage protections will be more difficult under the new, narrower definition of joint employer, conceding that it will "reduce the amount of back wages that employees are able to collect when their employer does not comply with the Act and, for example, their employer is or becomes insolvent." 85 Fed. Reg. at 2853.

16. In New Jersey in 2018, the average annual wage earned in highly fissured industries was $36,407. According to the Division of Taxation's State Income Tax tables, this income was taxable by the State of New Jersey at 3.5 percent minus a $682.50 standard deduction, amounting to an average of $591.74 in state income tax paid per person. Total income taxes collected from workers in these industries amounted to $395.2 million in 2018. Increased wage theft in these industries will result in a reduction in this tax revenue.

17. For workers categorized as employees, New Jersey law requires employers and employees to contribute to State unemployment insurance, workforce development, disability insurance and family leave insurance funds through payroll taxes. Applying the employer and employee contribution rates for contributions for 2018 (the last year for which annual average employment and wages are available for the industries noted in Table 1), payroll taxes amount to 1.63 percent of total wages or $16.32 for every $1,000 in wages paid. 1.63

---

[6] *Independent Contractor Misclassification Imposes Huge Costs on Workers and Federal and State Treasuries*, https://www.nelp.org/ publication/independent-contractor-misclassification-imposes-huge-costs-on-workers-and-federal-and-state-treasuries-update-2017/

percent of the total wages paid in 2018 in fissured industries amount to $255.9 million in New Jersey payroll taxes.  Increased wage theft in these industries resulting, as USDOL concedes, from the Final Rule, will result in a reduction in employer payments and underfunding of these accounts.

18. Employers in highly fissured industries disproportionately burden the Unemployment Insurance system because they lay off their employees more frequently and in larger numbers than other industries.  In New Jersey, of the 667,931 workers employed in industries with high rates of subcontracting and outsourcing, 273,954 work in industries with above average rates of usage of the Unemployment Insurance system. With the Final Rule's narrowed definition of joint employer, entities that should be deemed joint employers under State law may fail to pay payroll taxes and/or deduct employee contributions. Without increased State enforcement, State Unemployment Insurance accounts may be underfunded and employees may be ineligible for benefits.

19. When businesses do not properly classify workers as employees, law-abiding employers have to pay more to make up for the shortfall in the Unemployment Trust Fund. A 2000 U.S. Department of Labor study of misclassification in construction found that the failure to properly classify construction employees resulted in state income taxes not being paid on up to $11 million in off-the books employment and nearly $9 million from employment of misclassified workers. As a result, the State lost an estimated $3.1 to $6.7 million in unemployment contributions in 2000.[7]  Because misclassification has grown since 2000, it

---

[7] Oliver Cooke, Deborah Figart and John Froonjian, *The Underground Construction Economy in New Jersey* (2016) https://stockton.edu/hughes-center/documents/2018-0424-underground- economy-report.pdf

can reasonably be concluded that New Jersey has lost tens of millions of dollars in state income taxes and unemployment and disability contributions due to misclassification in all industries, but especially in the industries with high rates of subcontracting and outsourcing. With a narrower Federal definition of joint employer, it can be expected that a larger number of employers will misclassify workers, and without increased State enforcement, there will be an increasing loss in State revenue.

20. Workers in highly fissured industries suffer more injuries than those in other industries. According to the Survey of Illnesses and Injuries administered by NJDOL, the incidence of illnesses and injuries in these highly fissured industries is higher than the state average of 2.6 per 100 full-time workers in all but two of the industries for which data are available. Injury incidence is about double the state average in warehousing and storage (5.2) and grocery stores (5.1). Other industries on the list with high injury rates include freight trucking and hotels (both 3.8), and taxi and limousine services (2.7). Many of the occupations associated with these industries rank among the top 10 occupations with the most illnesses and injuries including: laborers, truck drivers, janitors, maintenance and repair workers, retail salespersons, and stock clerks and order fillers. (US Bureau of Labor Statistics, Survey of Illnesses and Injuries, 2018). With a narrower definition of joint employer, employees may be unable to obtain redress for their injuries and employers may be able to evade responsibility.

21. Employees alleging violations of State labor laws can file claims administratively through the NJDOL or can file claims alleging violations of the FLSA with the U.S. Department of Labor. And under either State law or the FLSA, an employee can pursue a private right of action in court. Because the Final Rule does not affect New Jersey's standards for joint

employer status, the narrowing of the federal standard will result in more employees

choosing to file claims with NJDOL or State courts alleging violations of State law. And

because workers in fissured industries are disproportionately low-wage workers, they are

more likely to file State law claims with NJDOL, where there are no filing fees and there is

no need to retain an attorney. The increase in wage and related claims would be a strain on

NJDOL's limited resources even in ordinary times, but the burden is exacerbated during the

current pandemic, where resources are being diverted to the huge numbers of

unemployment insurance claims being filed with NJDOL, and State revenue has drastically

decreased.

I declare under penalty of perjury that, to the best of my knowledge, the foregoing is true and correct.

Executed this 15th day of May, 2020 at Trenton, New Jersey.

Lesley Hirsch
Assistant Commissioner of Research
New Jersey Department of Labor and Workforce Development