# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

STATE OF NEW YORK, *et al.*,

                    Plaintiffs,

          vs.

EUGENE SCALIA, *et al.*

                 Defendants.

Civil Action No. 20-cv-1689 (GHW)

-------------------------------------------------------- x

## BRIEF OF THE RESTAURANT LAW CENTER AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

Lisa M. Lewis
lmlewis@sheppardmullin.com
SHEPPARD MULLIN RICHTER &
HAMPTON, LLP
30 Rockefeller Plaza
New York, NY 10112
Telephone:  (212) 634-3046
Facsimile:  (212) 655-1746

*Counsel for Restaurant Law Center*

## *TABLE OF CONTENTS*

*Page*

STATEMENT OF INTEREST ................................................................1

SUMMARY OF ARGUMENT ...........................................................1

ARGUMENT...................................................................................3

I. THE DEPARTMENT'S RULEMAKING PROCESS WAS NEITHER
ARBITRARY NOR CAPRICIOUS ..............................................3

    A.    The Department evaluated the RLC's comments regarding
specific factors of the balancing test and provided detailed
responses. ............................................................................4

    B.    In response to the RLC's comments, the Department evaluated
and revised the regulatory language to avoid uncertainty in
application of the four-factor test. ......................................5

    C.    The Department expressly balanced competing concerns in
concluding that specific business models and strategies do not
make joint employer status more likely...............................7

II. THE FINAL RULE SHOULD BE UPHELD ................................10

III. CONCLUSION.............................................................................10

## *TABLE OF AUTHORITIES*

*Page(s)*

<u>Federal: Statutes, Rules, Regulations, Constitutional Provisions</u>

*Joint Employer Status Under the Fair Labor Standards Act*, 85 Fed. Reg. 2820 (January 16, 2020), codified at 29 C.F.R. §§ 791.1- 791.3 (the "Final Rule")............................................................passim

## STATEMENT OF INTEREST

The Restaurant Law Center ("RLC") is a public policy organization affiliated with the largest trade association in the United States, the National Restaurant Association.  The RLC advocates on behalf of the restaurant and foodservice industry, which is the second-largest employer in the private sector with more than 15 million employees throughout the United States.

The Final Rule[1] of the U.S. Department of Labor (the "Department") impacts nearly every restaurant and foodservice business, whether a national brand or a local establishment.  Accordingly, the RLC has a significant interest in the development and application of the Department's joint employer regulations.

No party's counsel authored this brief, in whole or in part.  Nor did a party, party's counsel or person other than the *amicus curiae* contribute money intended to fund the preparation or submission of this brief.

## SUMMARY OF ARGUMENT

This *amicus curiae* brief does not repeat the arguments or evidence already submitted by the Department and Intervenors.  Rather, this brief explains why the Final Rule is neither arbitrary nor capricious under the Administrative Procedure Act ("APA"), as evidenced by the Department's reasoned consideration of

---

[1] *Joint Employer Status Under the Fair Labor Standards Act*, 85 Fed. Reg. 2820 (January 16, 2020), codified at 29 C.F.R. §§ 791.1-791.3 (the "Final Rule").

submitted comments.  This brief provides the Court with specific examples of the Department's diligence in its adoption of the Final Rule.

During the rulemaking process, the RLC submitted twenty-three pages of comments, many of which were referenced in the Final Rule.  Ultimately, the Department agreed with several of the RLC's proposed revisions, and made modifications accordingly.  Specifically, the Department clarified the limits of indirect control in hiring and firing employees; eliminated consideration of a potential joint employer acting "directly or indirectly in the interest of the employer in relation to the employee;" and codified that operating as a franchisor, entering into a brand-and-supply agreement, or using a similar business model does not make joint employer status more likely.  In each instance, the Department referenced the RLC's specific comments before explaining its position and reasoning.

The Department, however, did not always agree with the RLC's comments, and several requested revisions were rejected.  Indeed, the Department declined to add a 'day-to-day' qualifier to the second factor of the balancing test; did not delete the fourth factor from the balancing test; and adopted language allowing additional factors of significant control to be considered.

That the RLC, a public policy organization, had the opportunity to participate in the rulemaking process, and received reasoned and thorough

responses to its comments, refutes the State Plaintiffs' accusations of an APA

violation.  Indeed, the Department's comprehensive explanations and analyses

evidence the Department's overall commitment to respond to public concerns.

While the RLC does not agree with every aspect of the Final Rule, plainly the

Department's decisions were neither arbitrary nor capricious.  Accordingly, the

Final Rule should be upheld.

## ARGUMENT

### I.  THE DEPARTMENT'S RULEMAKING PROCESS WAS NEITHER ARBITRARY NOR CAPRICIOUS

As an initial matter, the RLC agrees the APA's notice-and-comment process

was not required for the Department's interpretation of joint employer status under

the Fair Labor Standards Act.  (*See* Def. Mem. at 11.)  Nevertheless, as the State

Plaintiffs now contend the Final Rule is arbitrary and capricious because the

Department failed to consider and respond to significant comments, the RLC offers

a summary of its comments and the Department's responses to demonstrate the

vigor with which the Department considered the public's concerns with its

proposed interpretative rule.

**A.      The Department evaluated the RLC's comments regarding specific factors of the balancing test and provided detailed responses.**

As reflected in the Final Rule, the RLC agreed with the Department that a multi-factor balancing test is consistent with section 3(d).  85 Fed. Reg. at 2829, 2830.  The RLC, however, proposed several revisions to the proposed factors.

First, the RLC suggested a "substantial frequency" requirement be added to the second factor, to require a joint employer to have "day-to-day" supervision and control.  85 Fed. Reg. at 2830.  The Department, however, rejected this addition, finding a lack of precedential support for the frequency limitation.  "While several courts outside of the Third Circuit have rejected a finding of joint employer status after noting the lack of day-to-day supervision, those courts did not explicitly hold that day-to-day supervision was necessary for joint employer liability."  85 Fed. Reg. at 2831.  Instead, acknowledging courts generally agree "only substantial supervision is indicative of joint employer status," the Department revised the second factor of the test, § 791.2(a)(1)(ii), to require supervision and control "to a substantial degree."  85 Fed. Reg. at 2832.  The Department's analysis and response to the RLC's comments, which included numerous parenthetical citations to relevant legal authority, demonstrate its comprehensive approach to evaluating comments and proposed revisions.

The RLC also requested the fourth factor be deleted.  The Department similarly rejected that change, reasoning "[c]ourts have frequently looked to maintenance of employment records as one of many factors appropriate for consideration in determining potential joint employer status."  85 Fed. Reg. at 2832.  However, "given the breadth of comments" addressing the fourth factor, the Department did add regulatory language, at § 791.2(a)(2), to clarify satisfaction of the fourth factor alone is not sufficient for joint employer status.  *Id.*  Once again, the Department did not simply accept or reject comments from employee or employer associations, but instead reviewed circuit opinions and created its own solutions.

**B.**   **In response to the RLC's comments, the Department evaluated and revised the regulatory language to avoid uncertainty in application of the four-factor test.**

In its comments, the RLC expressed concern that incidental impact on a worker's employment, such as a restaurant providing feedback or expressing customer preferences to a cleaning service, would result in a finding of joint employment, even where it was the contractor's decision whether to hire or fire an employee in response to such feedback.  85 Fed. Reg. at 2833.  Although the Department did not expressly clarify that providing feedback is not a factor that

makes joint employment more likely, the Department added § 791.2(a)(3)(ii) to explain the limits of indirect control.

In light of this revision, and in response to the RLC's request, the Department also modified its fourth example, § 791.2(g)(4). 85 Fed. Reg. at 2847. In the Final Rule, the country club and landscaping company were replaced with a restaurant and cleaning company. *Id.* The facts were also changed to demonstrate "that a single request to fire an employee in this example was not significant enough to exercise indirect control over hiring or firing." *Id.*

The RLC was also concerned that § 791.2(b), authorizing "additional factors" to be considered beyond the four-factor test, would open the "floodgates" of litigation. 85 Fed. Reg. at 2836. The Department carefully considered public comments and adopted only part of subsection (b), deleting proposed § 791.2(b)(2) because it "does not provide meaningful limitation on the consideration of additional factors." *Id.* at 2837. The Final Rule now allows consideration of indicators of significant control, but language allowing the consideration of whether the potential joint employer acted "directly or indirectly in the interest of the employer in relation to the employee" has been deleted. 85 Fed. Reg. at 2836.

**C.**     **The Department expressly balanced competing concerns in concluding that specific business models and strategies do not make joint employer status more likely.**

As a public policy organization advocating on behalf of the restaurant and foodservice industry, the RLC requested the regulation specify that franchise business models, as well as certain contractual agreements and business practices, do not make joint employment more likely.  85 Fed Reg. at 2839, 2840.  There are many different types of franchising arrangements in the food service industry, and "franchisors need to be able to communicate freely with their franchisees regarding their operations without the risk of joint employer liability."  (Declaration of Lisa M. Lewis ¶ #, Ex. A (June 25, 2019 Correspondence from RLC to U.S. Department of Labor re Notice of Proposed Rulemaking), p.18.)

On the other hand, labor unions and other worker representatives "felt strongly that business models should not be generally excluded from consideration of joint employer status."  85 Fed. Reg. 2840.  The AFL-CIO "claimed that certain business models, such as temporary staffing agencies, labor supply firms, or franchisors, are empirically more likely to be joint employers."  *Id.*  The Department also quoted commentary from the Center for Law and Social Policy, which claimed "the growing variety and number of business models and labor arrangements have made joint employment more common."  *Id.* at 2840-2841.

Thus, contrary to the State Plaintiffs' arguments, comments from the Center for Law and Social Policy were expressly considered and cited, receiving much more than "cursory treatment." (*See* Pl. Mem. at 28-29.)

As set forth in the Final Rule, the Department evaluated the comments and concerns from employer and employee associations alike, and ultimately concluded "there is nothing inherent" in the brand-and-supply or franchise business models that is "indicative of joint employer status under the FLSA." *Id.* The Final Rule, however, adopts a modified and more limited version of § 791.2(d)(2), "allowing for the possibility that business models could be devised" that would involve the exercise of control over the terms and conditions of employment, and thus make joint employer status more likely. *Id.* Thus, using a balanced approach to competing concerns, the Department modified the regulation to reach a middle ground, which further demonstrates the Department's comprehensive approach to reviewing and responding to public comments.

Relatedly, the RLC commented that providing sample handbooks and forms, analytical tools, or marketing materials to improve businesses and achieve legal compliance should not make joint employer status more likely. 85 Fed. Reg. at 2843. "To protect their brands, franchisors need to be able to provide guidance and support to franchisees. … Franchisors also need to be able to require that

-8-

certain cleanliness, hygiene, safety, certification and training requirements are met."  (Lewis Decl., ▯ #, Ex. A, p. 10.)

The Department cites to these comments, as well as legal opinions and submissions received from employee associations, including labor unions, in analyzing the distinction between business strategies and resources and the exercise of control over employees' terms or conditions of work.  85 Fed. Reg. 2844.  In adopting § 791.2(d)(5), the Department ultimately concluded a "potential joint employer would have to not only provide such resources, but would also have to somehow exercise control over the employees in relation to those resources." *Id.*  The Department's conclusions are well reasoned, supported by ample authority, and clearly considered the input from both employee and employer perspectives.[2]  *See id.*, fn. 87.  This significant undertaking demonstrates there is nothing capricious or arbitrary about the Final Rule.

---

[2]  The COVID-19 pandemic amplifies the wisdom of the Department's conclusion, as it is more important than ever for franchisors to be able to share resources and information with their business partners.  For example, McDonald's USA issued a 59-paged guide outlining minimum standards, such as temperature checks, social distancing guidelines, requiring gloves and masks, and frequent handwashing to keep restaurant employees and customers safe.  McDonald's, Our Goal: Safety First (May 19, 2020), https://news.mcdonalds.com/news-releases/news-release-details/setting-record-straight-were-taking-care-our-family#:~:text=We%20are%20grateful%20for%20the,restaurants%20is%20a%20top%20priority.

## II.  <u>THE FINAL RULE SHOULD BE UPHELD</u>

The restaurant and foodservice industry faces an ever-expanding set of unique, and sometimes contradictory, standards for joint employment established by different courts in different parts of the country.  These inconsistencies are onerous for both small employers, which have limited resources, and larger businesses, which operate in multiple states.  Indeed, the State Plaintiffs' summary of the multi-factor tests created in different circuits only underscores the problem, as some courts use six "nonexclusive" factors, some courts apply a 13-factor test, and other courts instead consider the "total employment situation."  (Pl. Mem. at 21.)

Although many of the RLC's proposed revisions were not ultimately adopted, the Final Rule brings clarity and certainty to the standard for joint employment, and benefits businesses and employees alike.  Accordingly, the RLC urges the Court to uphold the Final Rule.

## III.  <u>CONCLUSION</u>

For all of the foregoing reasons, the RLC respectfully requests the Court deny the State Plaintiffs' motion for summary judgment, grant the Defendants' motion for summary judgment, and hold the Final Rule lawful.

New York, New York
July 24, 2020

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**


By:       /s/ Lisa M. Lewis

        Lisa M. Lewis
        lmlewis@sheppardmullin.com
        SHEPPARD MULLIN RICHTER &
        HAMPTON, LLP
        30 Rockefeller Plaza, 39th Floor
        New York, New York 10112
        Telephone:  (212) 634-3046
        Facsimile:  (212) 655-1746

        Attorney for *Amicus Curiae*
        Restaurant Law Center